[Cite as *State v. Amero*, 2024-Ohio-1007.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

LAURA E. AMERO,

        Defendant-Appellant.

**CASE NO. 2020-P-0029**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00366

---

# O P I N I O N

Decided: March 18, 2024
Judgment: Affirmed

---

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*J. Gerald Ingram* and *Frank Louis Cassese*, Ingram, Cassese & Grimm, LLP, 7330 Market Street, Youngstown, OH 44512 (For Defendant-Appellant).

ON RECONSIDERATION[1]

MARY JANE TRAPP, J.

{¶1} Appellant, Laura E. Amero ("Ms. Amero"), appeals from the judgment of the Portage County Court of Common Pleas that sentenced her to a total ten-year term of imprisonment following her guilty pleas to two counts of sexual battery and one count of sexual imposition. Ms. Amero's convictions stem from her abuse of her position as a principal to commit improper sexual acts with two minors under her supervision.

---

1. The original announcement of our decision, released on February 6, 2023, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 26(A)(1).

{¶2} Ms. Amero raises two assignments of error on appeal, contending the trial court erred by (1) imposing a maximum sentence of five years for each count of sexual battery and (2) imposing a consecutive sentence for the counts of sexual battery since the record clearly and convincingly does not support such findings.

{¶3} After a careful review of the record and pertinent law, we find Ms. Amero's assignments of error are without merit.

{¶4} Firstly, R.C. 2953.08(G)(2)(a) does not allow an appellate court to vacate a sentence based on lack of support in the record for a trial court's findings under R.C. 2929.11 and R.C. 2929.12, and Ms. Amero has failed to demonstrate the trial court did not consider the statutory factors.

{¶5} Secondly, applying our deferential standard of review as set forth by the Supreme Court of Ohio in *State v. Gwynne*, 2023-Ohio-3851, --- N.E.3d ---, ¶ 5 ("*Gwynne V*"), it is clear that the trial court engaged in the correct analysis pursuant to R.C. 2929.14(C)(4), that the record contains evidence to support its findings, and that the trial court's imposition of consecutive sentences should be upheld.

{¶6} The judgment of the Portage County Court of Common Pleas is affirmed.

### Substantive and Procedural History

{¶7} In April 2019, the Portage County Grand Jury charged Ms. Amero with six counts: (1) & (2) sexual battery, third-degree felonies, in violation of R.C. 2907.03(A)(7) and (B); (3) & (4) attempted sexual battery, fourth-degree felonies, in violation of R.C. 2923.02(A) and R.C. 2907.03(A)(7) and (B); and (5) & (6) intimidation of victim or witness in a criminal case, first-degree misdemeanors, in violation of R.C. 2921.04(A), (D), and (E).

2

**{¶8}** In November 2019, the court accepted Ms. Amero's guilty plea to counts one and two, sexual battery, and an amended count three, sexual imposition, a first-degree misdemeanor, in violation of R.C. 2907.06. The court set the matter for a presentence investigation ("PSI") and a sentencing hearing.

### PSI Report

**{¶9}** The PSI report revealed per a police report that Ms. Amero engaged in fellatio with a minor student victim during the spring/summer of 2017 in her office as a principal on at least two occasions. She also made sexual advances toward another minor student victim, which included inappropriate grabbing, kissing, and touching on no more than 20 occasions. The information in the police report was confirmed by Ms. Amero's confession to the police.

**{¶10}** In reporting her mental health history, Ms. Amero advised that when she was in high school, she was diagnosed with depression, anxiety, obsessive-compulsive disorder, and an eating disorder.

### Sentencing Hearing

**{¶11}** In February 2020, the court held a sentencing hearing, at which it first reviewed Ms. Amero's Tier III sexual offender classification and requirement of lifetime registration.

**{¶12}** Defense counsel then spoke on Ms. Amero's behalf and argued points raised in a sentencing memorandum filed with the court several days before. In the sentencing memorandum, defense counsel conceded that the sentencing factors that indicate Ms. Amero's conduct was more serious than conduct normally constituting the offense included her position of trust and the use of her position to facilitate the offenses.

3

{¶13} Defense counsel advocated for community control sanctions in lieu of prison, arguing that there were factors that indicated Ms. Amero's conduct was less serious than conduct normally constituting the offense, including the minor victims induced or facilitated the offense, Ms. Amero acted under strong provocation, and she did not expect to cause physical harm. In addition, Ms. Amero has no criminal history, she has never been under a court sanction, she has no drug and/or alcohol dependency issues, she self-initiated counseling with a psychologist and a pastor, she has genuine remorse, she confessed to her crimes when confronted by law enforcement, and she is less likely to reoffend because she can no longer work in the field of education.

{¶14} The state advocated the maximum sentence of imprisonment because Ms. Amero abused her position of trust by violating children, creating life-long trauma for her victims and the victims' parents; she has a demonstrated pattern of being a child sexual predator; and she betrayed the trust of the parents and the community.

{¶15} Ms. Amero also spoke to the court, expressing her remorse to the victims and community, and told the court she would continue to work on her "mental health treatment."

{¶16} The court reminded Ms. Amero that she was the superintendent of one of the poorer districts in the county and that she violated her position of trust and the ethical/moral code it carried, betraying the students she was supposed to protect. The court found Ms. Amero's "mental health issues" disingenuous, noting she "rose to the top of her game."

{¶17} The court then reviewed the sentencing factors, finding a prison term was consistent with the purposes and principles of sentences. The court also found that

4

consecutive sentences were necessary to protect the public from future crimes and to punish Ms. Amero fairly. The court found they were not disproportionate to the seriousness of her conduct or to the danger she poses to the public and that at least two or more of the offenses were committed as part of one or more courses of conduct. The court found the harm caused by two or more of the multiple offenses committed was so great or unusual no single prison term adequately reflects the seriousness of the conduct.

{¶18} The court sentenced Ms. Amero to consecutive five-year prison terms on both counts of sexual battery and a concurrent term of 180 days in prison on the count of sexual imposition.

{¶19} Ms. Amero raises two assignments of error for our review:

{¶20} "[1.] The record clearly and convincingly establishes that the sentencing court misapplied and failed to properly consider the sentencing criteria contained in R.C. 2929.11 and 2929.12 when it imposed maximum individual sentences of five (5) years on each count of sexual battery, in violation of R.C. 2907.03.

{¶21} "[2.] The trial court erred by imposing maximum consecutive sentences pursuant to R.C. 2929.14(C)(4) where the record clearly and convincingly does not support such a finding."

**Felony Sentencing Standard of Review**

{¶22} The standard of review for felony-sentencing appeals is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. That provision states:

5

{¶23} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶24} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶25} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶26} "(b) That the sentence is otherwise contrary to law."

{¶27} "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**Maximum Individual Sentences**

{¶28} In her first assignment of error, Ms. Amero contends the trial court erred by failing to properly consider the statutory sentencing factors pursuant to R.C. 2929.11 and 2929.12 when it imposed the maximum sentence of five years on each count of sexual battery.

6

{¶29} R.C. 2929.11 and 2929.12 apply as a general judicial guide for every sentencing. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36, *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160, 172 L.Ed.2d 517, 129 S.Ct. 711 (2009). R.C. 2929.11(A) provides that the trial court "shall be guided by the overriding purposes of felony sentencing," which are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To "achieve those purposes," the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* A felony sentence "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶30} R.C. 2929.12(A) grants the sentencing court "discretion to determine the most effective way to comply with the purposes and principles of sentencing * * *." In exercising that discretion, the court shall consider, along with any other "relevant" factors, the seriousness factors in R.C. 2929.12(B) and (C) and the recidivism factors in R.C. 2929.12(D) and (E). *Foster* at ¶ 37. There is no mandate for judicial fact-finding in the general guidance statutes; rather the court is merely to "consider" the statutory factors. *Id.* at ¶ 42.

7

**{¶31}** The Supreme Court of Ohio has clarified the application of R.C. 2953.08(G)(2) in relation to R.C. 2929.11 and 2929.12 in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. The court held that R.C. 2953.08(G)(2)(a) does not allow an appellate court to vacate a sentence based on "lack of support in the record for a trial court's findings under R.C. 2929.11 and 2929.12." *Id.* at ¶ 29. It concluded that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law'" as set forth in R.C. 2953.08(G)(2)(b). *Id.* at ¶ 32. Thus, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

**{¶32}** Ms. Amero emphasizes that she only questions whether the trial court applied the correct factors and not the weight assigned to each factor. However, throughout her merit brief, she analyzes whether the factors supported the court's sentence and emphasizes that when considering all of the factors in support of her argument, the sentence was not supported by the evidence. To the extent that addressing these specific issues would involve weighing the R.C. 2929.11 and R.C. 2929.12 factors to determine whether the court's sentence was appropriate, consistent with *Jones*, we will not conduct such a weighing of the evidence or substitute this court's judgment for that of the trial court.

**{¶33}** We will, however, address Ms. Amero's contention that the lower court was not permitted to consider the school official/student relationship as a factor making the crime more serious under R.C. 2929.12(B), as it goes to a legal issue independent of

8

weighing the evidence. *See State v. Chase*, 11th Dist. Lake Nos. 2020-L-070 and 2020-L-071, 2021-Ohio-1006, ¶ 10 ("[w]e will address [appellant's] argument to the limited extent that [he] claims * * * the trial court explicitly relied on facts that it was precluded from considering by law").

**{¶34}** Ms. Amero argues that the lower court was not permitted to consider that the crime of sexual battery occurred against students while she was in the position of a school principal as a factor making the crime more serious pursuant to R.C. 2929.19(B), since this status is also an element of the offense.

**{¶35}** As this court explained in *State v. Russell*, 11th Dist. Lake 2019-L-138, 2020-Ohio-3243, "[t]he statutory text of R.C. 2929.12(B) does not support a conclusion that a trial court may not recognize an element of an offense in its consideration of the seriousness of an offender's conduct" and "contains no exception for factors that may overlap with the elements of an offense." *Id.* at ¶ 81-82. We further noted that the factor at issue will apply uniformly for all instances of the same offense and, thus, would lead to fair application since R.C. 2929.12(B) requires the court to consider factors "as indicating that the offender's conduct is more serious than conduct normally constituting the offense." (Emphasis omitted.) *Id.* at ¶ 83-84.

**{¶36}** Pursuant to the foregoing precedent, the trial court was permitted to consider that the crimes of sexual battery occurred against students while Ms. Amero was a school principal as a factor making the crime more serious pursuant to R.C. 2929.19(B). We may not second-guess how much weight it gave this factor in comparison to others under *Jones*.

9

{¶37} In support of her argument, Ms. Amero cites *State v. Polizzi*, 11th Dist. Lake Nos. 2018-L-063 and 2018-L-064, 2019-Ohio-2505, ¶ 28. *Polizzi*, however, is inapposite to the present case since it was concerned with whether the trial court's consecutive sentence findings pursuant to R.C. 2929.14(C)(4) were clearly and convincingly supported by the record. *Id.* at ¶ 47. This court subsequently reconsidered *Polizzi* and affirmed the trial court's imposition of consecutive sentences. *See State v. Polizzi*, 11th Dist. Lake Nos. 2020-L-016 and 2020-L-017, 2024-Ohio-142, ¶ 11.

{¶38} Finally, to the extent Ms. Amero argues that the lower court failed to consider factors making the crime less serious, we emphasize that there is a presumption that a court considered R.C. 2929.12, even where the trial court is silent regarding these factors, unless the defendant affirmatively demonstrates the contrary. *State v. Claar*, 11th Dist. Portage No. 2020-P-0058, 2021-Ohio-2180, ¶ 11; *State v. Foster*, 11th Dist. Portage No. 2011-P-0087, 2012-Ohio-3744, ¶ 9. We do not find Ms. Amero has demonstrated that the trial court failed in its duty to consider all the required factors under R.C. 2929.12.

{¶39} Ms. Amero's first assignment of error is without merit.

### Consecutive Sentences

{¶40} In her second assignment of error, Ms. Amero contends the trial court erred by imposing maximum consecutive sentences because the record does not clearly and convincingly support the trial court's findings.

{¶41} R.C. 2929.41 creates a statutory presumption in favor of concurrent sentences, providing, in pertinent part, that "[e]xcept as provided in * * * division (C) of section 2929.14, * * * a prison term * * * or sentence of imprisonment shall be served

10

concurrently with any other prison term * * * or sentence of imprisonment imposed by a court of this state * * *." R.C. 2929.41(A).

{¶42} R.C. 2929.14(C)(4), in turn, provides, "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively" if it finds (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) as applicable in the instant case:

{¶43} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶44} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* Otherwise, "the imposition of consecutive sentences * * * is contrary to law." *Id.*

{¶45} "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the

11

findings, consecutive sentences should be upheld." *Id.* at ¶ 29. In other words, "'[i]f the court has properly made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we "clearly and convincingly" find "[t]hat the record does not support the court's findings[.]"'" *State v. Haynes*, 11th Dist. Lake No. 2022-L-009, 2022-Ohio-4464, ¶ 48, quoting *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 19 (8th Dist.), quoting R.C. 2953.08(G)(2)(a).

{¶46} In *Gwynne V*, the Supreme Court of Ohio explicitly vacated *State v. Gwynne*, 2022-Ohio-4607, --- N.E.3d ---, and its holding that appellate review is de novo because "the plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *Gwynne V* at ¶ 5. "[A]n appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences. The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings. This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings. R.C. 2953.08(G)(2) also ensures that an appellate court does not simply substitute its judgment for that of a trial court." *Id.* at ¶ 15.

{¶47} Our review of the sentencing hearing transcript and record contradicts Ms. Amero's contention that the record does not clearly and convincingly support the trial court's findings. The trial court reviewed that Ms. Amero, as a principal in one of the poorer districts in the county, abused her position to engage in improper sexual conduct

12

with the minor students she was charged with protecting and teaching. The trial court also recognized the impact her crimes had and will continue to have not just on the victims and their families but on the entire community. The record reveals Ms. Amero committed these offenses when she was a principal and then went on to assume the even greater role of superintendent of the school district despite her offenses. A consideration of "*[t]he nature and extent* of [the defendant's] conduct *over an extended time period in his [or her] role as a public official* can operate to augment the seriousness of his [or her] conduct for sentencing purposes." (Emphasis added.) *State v. Spellman*, 160 Ohio App.3d 718, 2005-Ohio-2065, 828 N.E.2d 695, ¶ 30 (11th Dist.).

{¶48} Further, Ms. Amero committed these offenses multiple times over a long period of time. The dissent narrowly views the record and apparently advocates for a new rule that only "written or other victim impact statements" may be considered record evidence supporting a finding of great or unusual harm. Despite the absence of any formal victim impact statements, the record does contain (and the dissent acknowledges this record evidence) a PSI report. The report reveals that the victims described the nature and number of Ms. Amero's acts of sexual conduct in their reports to the police and that Ms. Amero confirmed them in a confession. If we require the victim to make a statement detailing the specifics of the harm caused, how would a toddler be able to communicate the "specific harm" caused by sexual abuse? How would any court then be able to run sentences consecutively?

{¶49} Ms. Amero's sexual conduct with each victim was not a "one-off" aberration or a loss of control that was not repeated. Rather, Ms. Amero engaged in fellatio with one victim on two separate occasions in her office. The other victim reported not only

13

that she grabbed his penis while in her office, but also that she tried to kiss him and touched him on "no more than twenty occasions." Thus, evidence in the record indicates that Ms. Amero is a serial offender with two different victims, not someone who just lost control on one occasion. This court has recognized that "an offender's prolonged sexual relationship with an underage victim under his [or her] care in some capacity supports a trial court's finding that the harm caused was so great or unusual that no single prison term adequately reflects the [seriousness of the] offender's conduct." *Russell*, *supra*, at ¶ 137. The extent and repetitive nature of Ms. Amero's sexual conduct with each victim supports a finding of great or unusual harm.

{¶50} The PSI report also notes Ms. Amero's acknowledgments that she "damaged" the trust relationship that the victims had with "an adult [that was] their role model and principal" and that she is "sure" the victims are "embarrassed and uncomfortable because their names and reputation are all a part of this." Additionally, the defense's sentencing memorandum acknowledges that this case came to the police's attention from rumors, so of course there is additional reputation damage that necessarily comes with fellow students and the community learning about these sexual encounters and the victims' identities.

{¶51} The record further demonstrates that in addition to committing these offenses, Ms. Amero intimidated her minor victims. While the charge of intimidation of a victim or a witness in a criminal case was dismissed as part of her plea agreement, a sentencing court may consider charges that have been dismissed or reduced under a plea agreement. *State v. Rush*, 2013-Ohio-2728, 996 N.E.2d 503, ¶ 13 (5th Dist.).

14

Case No. 2020-P-0029

Layering repeated sexual conduct with threats designed to keep the victims from reporting the conduct necessarily results in great and unusual harm.

{¶52}  As our review reveals, the trial court engaged in the correct analysis, and the record contains evidence to support its findings.  It bears repeating that pursuant to *Gwynne V,* "[t]he statutory language [of R.C. 2953.08(G)(2)] does not require that the appellate court have a firm belief or conviction that the record supports the findings." *Id.* at ¶ 15.  Applying our deferential standard of review, it is clear the record supports the trial court's findings and its consecutive sentences should be upheld.

{¶53}  Ms. Amero's second assignment of error is without merit.

{¶54}  The judgment of the Portage County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J., concurs,

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶55}  I concur with the majority's reasoning and disposition of the first assignment of error since the lower court did not err in considering the necessary statutory factors in sentencing Amero.  I dissent, however, from the majority's decision to grant the State's motion for reconsideration, vacate this court's opinion, and from its holding that the record clearly and convincingly supported the trial court's consecutive sentencing findings.  Since it is evident that the record was devoid of evidence to demonstrate great or unusual harm, reconsideration is improper and this court's decision should not be vacated.

15

Case No. 2020-P-0029

{¶56} To order a consecutive sentence based on R.C. 2929.14(C)(4)(b), the record must demonstrate that the harm caused by the offenses was "*so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of*" the offender's conduct. (Emphasis added.) *Id.* While the majority emphasizes that, under *State v. Gwynne*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __ ("*Gwynne V*"), this court must "employ a deferential standard to the trial court's consecutive-sentencing finding" and not substitute its judgment for the lower court's, *supra* at ¶ 46, it does not follow that this court should rubber-stamp these findings or uphold them when they are entirely devoid of support in the record. Here, the record did not contain *any* evidence to demonstrate the harm caused to the victims, let alone evidence of great or unusual harm. The State did not specify what harm was caused to the victims, other than a general statement that sexual abuse causes harm. The PSI did not include any statements by the victims of the harm they suffered. No statements by the victims were made part of the record. Without evidence in the record to demonstrate any basis for a conclusion that the harm was great or unusual, such a finding is clearly and convincingly contrary to the record. Contrary to the majority's argument, the victims' statements recounting the facts giving rise to the crime do not constitute evidence of great or unusual harm. All charges brought against a defendant are precipitated by evidence that the offense was committed; the evidence needed for consecutive sentences is evidence that *great or unusual harm* occurred, not just that a crime was committed.

{¶57} The purpose of requiring the findings under R.C. 2929.14(C)(4) is to ensure there is justification for consecutive sentences. Such sentences may not be ordered in

16

every case; there must be a factual basis in the record for the court's findings. The State simply failed to introduce any evidence whatsoever of the impact of the offenses. Harm can be inferred in any case where there was a crime but more is required to justify a consecutive sentence and a finding of "great or unusual harm." "Whenever a trial court is required to make a finding, there obviously must be a factual basis in the record for the finding; otherwise the requirement would meaninglessly exalt form over substance. The making of a required finding adverse to the defendant when there is nothing to support that finding is analogous to a jury's returning a guilty verdict when there is no evidence in the record to support an essential element of the offense." *State v. Carter*, 2d Dist. Champaign No. 2005-CA-24, 2006-Ohio-984, ¶ 25.

{¶58} The majority asserts that a prolonged sexual relationship with an underage victim constitutes evidence of great or unusual harm, citing *State v. Russell*, 11th Dist. Lake No. 2019-L-138, 2020-Ohio-3243. This argument is unavailing. *Russell* is factually distinct and involves examples of harm that are not present here, including that the defendant, who was an "uncle figure," sexually abused an underage victim who was 12 to 14 years old over the course of two and a half years. *Id.* at ¶ 2. Here, one of the victims was not a juvenile and the other, who was 17, alleged two incidences of abuse. Unlike in *Russell*, there was no "prolonged sexual relationship with an underage victim." *Id.* at ¶ 137.

{¶59} While this writer agrees that any sexually oriented crime is abhorrent and repulsive, that fact underscores the need for some evidence of the great or unusual harm. Given the dearth of evidence in the record to support such finding, and the statutory requirement that this court modify or reverse a sentence if it clearly and convincingly finds

17

that the record does not support the lower court's consecutive sentencing findings, the motion for reconsideration should be overruled and this court's opinion should not be vacated. For these reasons, I dissent as to the second assignment of error.

Case No. 2020-P-0029