[Cite as *State v. Melott*, 2025-Ohio-2444.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRIAN A. MELOTT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0057

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 113

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor*, Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Edward F. Borkowski, Jr.*, for Defendant-Appellant.

Dated:  July 8, 2025

**Robb, P.J.**

{¶1}   Appellant, Brian A. Melott, entered guilty pleas to voluntary manslaughter with a three-year firearm specification and two counts of tampering with evidence.  The trial court imposed the agreed sentence.  Appellant argues on appeal that he was coerced into entering the plea agreement, and thus, it was not voluntary.  He also contends his trial counsel was deficient for failing to provide notice of his intent to argue self-defense and by providing Appellant with erroneous advice about the plea agreement.  For the following reasons, we affirm.

<u>Statement of the Case</u>

{¶2}   In April of 2024, Appellant was charged via a complaint filed in the Belmont County Eastern Division Court with one count of voluntary manslaughter, a first-degree felony.  He was appointed counsel and initial discovery was exchanged.  The matter was bound over to the Belmont County Court of Common Pleas.  (May 22, 2024 Judgment.)

{¶3}   Appellant was subsequently indicted by the grand jury and charged with three counts:  count one, murder in violation of R.C. 2903.02(A), (B), and (D) with a three-year firearm specification in violation of R.C. 2941.145(A); count two, voluntary manslaughter in violation of R.C. 2903.03(A) and (C) with a three-year firearm specification in violation of R.C. 2941.145(A); and count three, felonious assault in violation of R.C. 2903.11(A)(2), (B), and (D) with a three-year firearm specification in violation of R.C. 2941.145(A).

{¶4}   Defense counsel filed a suggestion of incompetency and request for a competency evaluation.  (August 7, 2024 Motion for Competency Evaluation.)  The court granted his request.  (August 9, 2024 Judgment.)

{¶5}   The court scheduled the case for a competency hearing.  The parties stipulated to the report findings, which determined Appellant was competent to stand trial.  (September 24, 2024 Judgment.)  The examining doctor found Appellant generally understood the nature of the proceedings, the seriousness of the charges against him, and the roles and functions of essential court personnel.  The report also concluded Appellant understood what a plea bargain was and he was capable of assisting in his defense and tolerating the stress of a trial.  (September 17, 2024 Competency Report.)

<u>Case No. 24 BE 0057</u>

**{¶6}** Appellant was subsequently charged with two counts of tampering with evidence in violation of R.C. 2921.12(A)(1) via a bill of information. (November 8, 2024 Bill of Information.) Appellant waived the right to be charged via indictment. (November 12, 2024 Waiver.)

**{¶7}** Appellant's counsel filed a motion to withdraw as counsel, noting the defendant refused to communicate with him. (November 12, 2024 Motion to Withdraw.) Later that same day, Appellant appeared with this same attorney at a scheduled plea deadline hearing. At the beginning of the hearing, defense counsel asked for the matter to be heard in chambers since certain issues were to remain confidential. The state agreed. The trial court granted the request. (November 12, 2024 Plea Hearing.)

**{¶8}** The prosecutor thereafter explained the plea offer:

[A] plea offer was made. It was an offer of an either/or type situation. Defendant is charged with three counts, all involving homicide. Two are murder; the other is a manslaughter charge. All three of them stem from the same incident: The shooting of David Allen. All three of them have gun specifications. In our discussions, we've had numerous discussions with [defense counsel]. We had made an offer of either life with chance of parole after 15 for the murder, or a flat 20-year sentence, which would require us to file an Information, for which we did. Ultimately, it was told to the State of Ohio that the Defendant had opted for the latter, which is a 20-year flat sentence. We had also indicated that due to his involvement with one of witnesses, [a minor] . . . We believe that there was sexual conduct, or a sexual relationship between the two, and we had indicated that we would forego any prosecutions relative to that. That, essentially, is the sum total of our plea negotiations.

(November 12, 2024 Plea Hearing Tr. 4-5.)

**{¶9}** Thereafter, defense counsel explained how he presented the offer to Appellant, along with the additional discovery information, 13 days before the hearing. Counsel said he reviewed everything with Appellant. A few days later, counsel took another attorney with him to see Appellant and answer his questions. On that date, defense counsel indicated Appellant verbally accepted the pending offer. A week later

when defense counsel appeared with the written agreement, Appellant refused to meet with him.  Counsel again attempted to visit Appellant, and he again refused to see defense counsel.  (November 12, 2024 Plea Hearing Tr. 5-6.)

{¶10} The prosecutor subsequently explained to the trial court judge that the uncharged sex offenses, which would not be prosecuted if Appellant entered the plea agreement, involved Appellant having sex with a 15-year old when he was 21 years old.  The state also explained Appellant had recorded the conduct and shared the recording with others.   Defense counsel stated he outlined the additional potential charges Appellant was facing to him at least twice.  Defense counsel said he met with Appellant five to six times.  Defense counsel then stated:  "and I believe the Court would actually have to impose those consecutively if he were convicted of anything in this case and also convicted of those [sex] charges, as well."  (November 12, 2024 Plea Hearing Tr. 7-10.)

{¶11} The court then asked questions in an apparent effort to understand the extent of additional prison time Appellant would be facing if those offenses were charged:

THE COURT:  Well, if I understand the State's-- I don't know anything about those charges, but if I understand the State's recommendations, you're talking about like eight years for each of those; is that?

[Defense counsel]:  Again, this is my opinion, Your Honor. [The state] hasn't necessarily confirmed this to be 100 percent true, but based upon what I've seen-- and I have viewed the evidence that is in the possession of law enforcement-- there are two separate items--and each of those could be a charge for the act itself, which would be an F4.  A possession of that material, which would be an F4, and then two F2s; one for the recording and one for the dissemination.  So there's potentially four charges:  Two F2s, two F4s, for each of those [alleged offenses].

THE COURT:  And the State has not indicted those yet?

[Defense counsel]:  No, Your Honor.

[Defense counsel]:   To the State's credit, [the prosecutor] has withheld indicting those the last two months, at my request, so we could try to resolve this. Because it was told to me that if they [sex offenses] are indicted, they will not go away as part of any Plea Agreement.

(November 12, 2024 Plea Hearing Tr. 9-10.)

**{¶12}** The trial court judge thereafter asked questions about Appellant's level of understanding about the gravity of the potential new charges and that, regardless of the victim's decision not to prosecute, the videos of the alleged acts would be shown to the jury. Defense counsel then assured the court that he told Appellant these are strict liability offenses. (November 12, 2024 Plea Hearing Tr. 10-11.)

**{¶13}** The court thereafter reviewed the terms of the plea deal on the record. During that explanation, Appellant asked if the sex crimes would be tried at the same time as the pending ones. The court responded likely no. The court then commented on the nature of the alleged evidence against Appellant, stating: "apparently there's a video admissible in evidence that it happened, and all they got to do, then, is prove that she was underage and you weren't, and that you knew that. . . . So that would be pretty easy for the jury if, in fact, that can be shown. But anyway, that goes away if there's a Plea Agreement." (November 12, 2024 Plea Hearing Tr. 14.)

**{¶14}** Thereafter, Appellant asked if he would be entitled to the self-defense instruction. The court explained the jury instructions depend on the evidence presented at trial. Appellant then continued to talk about self-defense, and the court stopped him and explained he did not want to get any further into the details. The court stated it wanted to ensure everyone understood what Appellant was facing and the extent of the plea agreement. (November 12, 2024 Plea Hearing Tr. 15-17.)

**{¶15}** Appellant then asked whether he could appeal. Defense counsel interjected, stating: "Remember, we talked about this?" In response to the question, the court began explaining what rights a person forgoes by entering a plea agreement, and then Appellant interrupted and stated he was a "first-time offender." The court again told Appellant he needed to speak with his lawyer to decide how to proceed, not the trial court. Appellant thereafter asked a question about merger, and the court answered him. Defense counsel then met privately with Appellant off the record. (November 12, 2024 Plea Hearing Tr. 18-21.)

**{¶16}** When the matter returned on the record, the proceedings were held in open court. Appellant and the state then agreed to enter a plea agreement. (November 12, 2024 Plea Hearing Tr. 21-22.)

**{¶17}** The written plea agreement does not describe the nature of the uncharged crimes discovered during the state's investigation of this case. However, the written agreement states in part that Appellant was pleading guilty to counts two, four, and five and the gun specification, and the "State agrees to not prosecute other alleged offenses discovered as part of the investigation in this case." (November 14, 2024 Plea of Guilty Petition.)

**{¶18}** Appellant agreed to plead guilty to count two, voluntary manslaughter with a three-year firearm specification. He also pleaded guilty to counts four and five, the two counts of tampering with evidence. In exchange, the state agreed to merge and move to dismiss counts one and three and the attendant specifications. The trial court adopted the parties' agreement and imposed the agreed upon sentence. For count three, the court imposed the agreed upon 11-year minimum term with a maximum 16.5 years in prison and three years on the firearm specification. For counts four and five, the parties agreed and the court ordered Appellant to serve two, 36-month terms in prison. The court ordered the sentences to be served consecutively with credit for time served. (November 14, 2024 Judgment.)

**{¶19}** Appellant raises two assignments of error.

Voluntary Nature of the Plea

**{¶20}** Melott's first assigned error contends:

"Appellant's guilty plea was not knowingly, intelligently, and voluntarily made."

**{¶21}** Appellant does not claim the court failed to comply with the Crim. 11(C) requirements. Instead, he contends his plea was not voluntary since Appellant claims he was coerced into entering the plea agreement. He claims his will was overborne by the statements of the court, his counsel, and the prosecution.

**{¶22}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

**{¶23}** In determining whether a guilty plea was entered knowingly, intelligently, and voluntarily, we conduct a de novo review to ascertain whether the trial court complied

with the constitutional and procedural safeguards. *State v. Lyda*, 2021-Ohio-2345, ¶ 28 (7th Dist.).

**{¶24}** Appellant cites several reasons in support of this argument. He claims he was threatened with new or additional charges if he did not enter a plea deal on that date. Appellant also contends his counsel misstated that the sentences for the additional charges would have to be served consecutive to the sentences for the existing charges. Additionally, Appellant asserts the trial court judge improperly inserted himself into the plea negotiations.

**{¶25}** Appellant also contends his counsel had moved to withdraw as counsel of record on the date of the plea negotiations. Appellant avers he and his counsel were "not on the same page" with respect to the plea agreement and he was uncertain whether the new alleged sex offenses would be tried together with the existing charges. Finally, Appellant relies on the fact that he continually claimed he acted in self-defense as showing he did not voluntarily enter a plea deal.

**{¶26}** The seminal case in Ohio on this issue is *State v. Byrd*, 63 Ohio St.2d 288 (1980). *Byrd* is an appeal from the denial of a postconviction petition in a death penalty case. The evidence in support of the petition showed the defendant had entered a guilty plea after the judge met with his mother and sister and encouraged them to have Byrd plead guilty or face going "to the chair." The court arranged the meeting with his family members, and the judge informed his family he would not receive a fair trial since the jury would be mostly white. The trial court judge encouraged Byrd's mother and sister to have him sign the guilty plea. Neither Byrd nor defense counsel were in attendance.

**{¶27}** Furthermore, at the time of executing the plea agreement, the defendant was addicted to methadone. And although he was represented by counsel at the plea hearing, Byrd did not have an opportunity to consult counsel before accepting the offer. The Supreme Court found the judge took a very active role in arranging the plea bargain, which likely made the defendant feel as though he was incapable of receiving a fair trial. The judge negotiated the agreement "and then recommended that the appellant make the plea." *Id*. at 294. Thus, the court held the plea was involuntary and void under the United States and Ohio Constitutions. *Id.*

**{¶28}** The court in Byrd explained a trial judge's participation in plea negotiations does not render a defendant's plea invalid per se. *Id.* at 293-294. Instead, "a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Id.* at 293. Courts may conclude a plea is involuntary and unconstitutional "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *Id.* at 293-294.

**{¶29}** We must examine the entirety of the proceedings to determine whether Appellant could have reasonably believed he could not get a fair trial because either the judge was biased against him or the judge suggested a trial would be futile.

**{¶30}** A review of the plea hearing in its entirety does not support Appellant's claim of coercion and that his plea was not voluntarily made. To the contrary, the trial court judge was answering Appellant's inquiries while at the same time ensuring he and Appellant were aware of the additional charges encompassed by the agreement.

**{¶31}** The uncharged offenses involving sex with a minor were not pending before the court, yet they were to be covered by the agreement Appellant was considering. Both attorneys informed the court about the nature of the alleged evidence against Appellant for these uncharged crimes, as well as the potential penalties. This information was relayed to the court by the prosecution and defense counsel in Appellant's presence. The court inquired about the details on the record in an apparent effort to understand and help Appellant understand as well. The written plea agreement ultimately executed by Appellant neither describes the offenses nor names the alleged victim.

**{¶32}** Moreover, defense counsel assured the court that the plea bargain was presented to Appellant in advance of the hearing orally and in writing. Defense counsel reviewed it with him at least twice before the plea hearing, and Appellant orally agreed with its terms on one occasion before the hearing.

**{¶33}** There is no indication the court was pressuring Appellant to enter the plea agreement. While the court commented on the strength of the evidence against Appellant regarding the uncharged sex crimes, it did so only after the state and defense counsel explained the offer on the record. In light of these facts, the court acted accordingly by

reviewing the plea in detail. The court did not suggest Appellant could not receive a fair trial, but was instead attempting to ensure he knew the scope of the plea bargain. The judge neither negotiated the agreement nor recommended Appellant enter the plea.

{¶34} Although it was the plea deadline hearing, Appellant knew the details of the proposal in advance and was afforded the opportunity to privately meet with counsel before and during the plea hearing. Moreover, it seems the plea agreement was highly favorable to him. Appellant was facing one count of murder and one felonious assault charge and multiple, uncharged additional felonies flowing from having sex with a minor, recording it, and disseminating it. The murder and felonious assault charges were dismissed and the state agreed not to pursue the other, uncharged offenses. Appellant received an agreed upon aggregate sentence of 20 to 25.5 years.

{¶35} This record does not demonstrate the trial court actively participated in the plea bargaining process. The colloquy was aimed at ensuring Appellant understood the offer presented and making a complete record of what the agreement entailed. The court answered direct questions raised by Appellant while making a record of the details of the agreement as presented by the state and defense counsel.

{¶36} Accordingly, we decline to find any coercion or that Appellant could have reasonably believed he could not get a fair trial because the court was biased or the judge thought a trial was a futile exercise. This assigned error lacks merit.

Ineffective Assistance of Counsel

{¶37} Melott's second assignment of error asserts:

"Appellant's counsel was ineffective."

{¶38} Appellant claims his trial counsel was deficient for two reasons. First, he claims trial counsel failed to argue he was acting in self-defense. He claims he was prejudiced since he was facing trial without the benefit of the defense being raised and litigated.

{¶39} Second, Appellant contends his attorney incorrectly advised him about consecutive sentencing regarding the proposed additional charges. Appellant claims defense counsel advised him that if he were charged with the additional counts involving sex with a minor, the prison time for the additional offenses would likely run consecutive

to the time for the pending charges.  Appellant claims this coerced him into entering the plea agreement since he believed he was facing significantly more jail time.

**{¶40}**  To establish a claim of ineffective assistance of counsel, a defendant must show his trial counsel's performance was deficient, in that it fell below an objective standard of care, and the deficient performance resulted in prejudice.  *State v. Bradley*, 42 Ohio St.3d 136, 141-143 (1989), citing *Strickland v. Washington*, 466 U.S. 668 (1984). The burden is on the defendant to prove ineffectiveness of counsel.  *State v. Smith*, 17 Ohio St.3d 98 (1985).  For an Appellant to show prejudice after entering a plea, he must demonstrate a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *State v. Romero*, 2019-Ohio-1839, quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**{¶41}**  Licensed attorneys in Ohio are presumed competent.  *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999).  In evaluating trial counsel's performance, appellate review is highly deferential because of the strong presumption counsel's conduct fell within the wide range of reasonable professional assistance.  *Bradley* at 142-143, citing *Strickland* at 689.  In fact, appellate courts are prohibited from second-guessing trial counsel's strategic decisions.  *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

**{¶42}**  To establish one has been prejudiced by their attorney's performance, an appellant must show that but for counsel's errors, the result of the proceeding would have been different.  *Bradley* at paragraph three of the syllabus.  "If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient."  *Bradley* at 142, citing *Strickland* at 695-696.

**{¶43}**  Crim.R. 12.2, Notice of self-defense, states:

Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, . . . the defendant shall, not less than thirty days before trial in a felony case and fourteen days before trial in a misdemeanor case, give notice in writing of such intent. The notice shall include specific information as to any prior incidents or circumstances upon which defendant intends to offer evidence related to conduct of the alleged victim, and the names and addresses of any witnesses defendant may call at trial to offer

testimony related to the defense. If the defendant fails to file such written notice, the court *may* exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted.

(Emphasis added.) As of the date of the plea hearing, Appellant's counsel had not filed a notice of intent to raise self-defense. The plea hearing was held approximately one week before the scheduled jury trial.

{¶44} A plain reading of the rule permits the court to exclude evidence of self-defense if the notice is not filed; exclusion is not mandatory. A court may allow the evidence if it determines the evidence should be admitted "in the interest of justice." *Id.*

{¶45} In this case, the court and counsel spoke about Appellant's claim that he was acting in self-defense during the plea hearing. Neither the state nor the court raised the fact that Appellant had not filed notice of self-defense. Notwithstanding, assuming counsel erred by failing to file the notice, we decline to find resulting prejudice.

{¶46} A guilty plea is a complete admission of guilt. *State v. Montgomery*, 2016-Ohio-5487. By pleading guilty, a defendant waives her right to a trial, admits to the material facts in the indictment, and authorizes the court to proceed to judgment. *Norton v. Green*, 173 Ohio St. 531, 533 (1962). As a result, a plea of guilty "effectively waives all appealable errors" at trial unrelated to the entry of the plea. *State v. Ketterer*, 2006-Ohio-5283, quoting *State v. Kelley*, 57 Ohio St.3d 127 (1991). Appellant's decision to enter the plea agreement waived this issue on appeal.

{¶47} Moreover, as the trial court pointed out during the plea hearing, the jury instructions it gives are dependent on the evidence presented at trial. Whether to provide a certain jury instruction is within a trial court's discretion and depends on whether the evidence presented at trial reasonably supports a finding of guilt on a particular charge. *State v. Wine,* 2014-Ohio-3948, ¶ 1. We cannot know what evidence would have been presented at a trial that did not occur and what jury instructions it supported. Thus, Appellant cannot show that but for counsel's error, the result of the proceeding would have been different. This aspect of Appellant's second assigned error lacks merit.

{¶48} Appellant's second argument in this assigned error contends his counsel erroneously advised him the sentences for the new uncharged offenses would run

Case No. 24 BE 0057

consecutive to the sentences for his pending charges. As alleged, defense counsel stated during the plea hearing that he "believe[s] the Court would actually have to impose those [sentences] consecutively if [Appellant] were convicted of anything in this case and also convicted of those [sex] charges, as well." (November 12, 2024 Plea Hearing Tr. 7-10.) Defense counsel did not give an explanation for this statement, and neither the prosecution nor the judge addressed the comment.

{¶49} In support of this argument, Appellant argues the statute governing multiple sentences, i.e., R.C. 2929.41, sets forth a presumption in favor of concurrent sentences. *State v. Amero*, 2024-Ohio-1007, ¶ 41 (11th Dist.). As he alleges, R.C. 2929.41(A) generally states that when multiple prison terms are imposed, the terms shall be served concurrently. However, Appellant's argument does not recite the remainder of the *Amero* analysis or R.C. 2929.14(C). R.C. 2929.14(C)(1)(a) provides for mandatory consecutive sentences when a firearm is involved in the commission of a felony. And R.C. 2929.14(C)(4) allows a court to impose consecutive prison terms for felonies when certain findings are made.

{¶50} Notwithstanding, assuming defense counsel erred by incorrectly stating that the sentences would run consecutive to one another, we cannot find that but for this error by trial counsel, Appellant would not have otherwise entered the plea agreement.

{¶51} As outlined in the first assignment of error, the plea agreement was quite favorable to Appellant. The court imposed the parties' agreed upon 20 to 25.5 aggregate sentence, which encompassed a first-degree voluntary manslaughter charge with a three-year firearm specification and two, third-degree felony tampering with evidence counts. The murder and felonious assault charges were merged and dismissed.

{¶52} Counsel's statement was qualified in that he said he "believed" the terms would run consecutively, and it was made in isolation. The misstatement was not repeated by the trial court or stated elsewhere in the record. As pointed out by the state, the firearm specification required a mandatory consecutive term. Further, the court could have ordered the sentences for the uncharged offenses to run consecutive to the terms in this case if the court made certain findings. While the court likely did not have to order the sentences to be served consecutively, it could have.

**{¶53}** Moreover, as depicted in the colloquy, Appellant was facing an additional possible four felony charges, two second-degree felonies and two fourth-degree felonies. In exchange for Appellant's guilty plea, the state agreed not to pursue these additional offenses discovered during the investigation of this case.

**{¶54}** While Appellant claimed to have been acting in self-defense to the pending charges, he does not point to, nor does the record show, any arguable defenses to the impending sex with a minor charges. Instead, the defense tended to acknowledge these additional offenses had been recorded and that the state had the recordings in its possession. (November 12, 2024 Plea Hearing Tr. 9-10.)

**{¶55}** In light of this record, we conclude Appellant has not demonstrated a reasonable probability that, but for this error, he would not have otherwise entered the plea agreement. Appellant's second assigned error is overruled.

Conclusion

**{¶56}** Both assignments of error lack merit. The trial court's judgment is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

——————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**